**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

ROMEO HEBERT, Individually and as representative of a class of similarly situated persons on behalf of the RICK CASE ENTERPRISES, INC. 401(K) PLAN,

Plaintiff,

v.

RICK CASE ENTERPRISES, INC., RITA M. CASE, DARREN W. STOKES, JOHN DOE DIRECTORS 1-10, JOHN DOE COMMITTEE MEMBERS 1-10,

Defendants.

**Case No. 25-62255-CIV-SINGHAL**

**CLASS ACTION**

**AMENDED COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF**

Plaintiff, Romeo Hebert ("Hebert" or "Plaintiff"), individually and as participant of the Rick Case Enterprises, Inc. 401(K) Plan ("Plan"), files his action under 29 U.S.C. § 1132, on behalf of the Plan and a class of similarly-situated participants and beneficiaries of the Plan, against Defendants, Rick Case Enterprises, Inc. ("Corporation"), Rita M. Case, Darren W. Stokes, the Board of Directors of Rick Case Enterprises, Inc. ("John Doe Directors 1-10" or the "Board"), the Retirement Plan Committee of Rick Case Enterprises, Inc. ("John Doe Committee Members" or "Administrative Committee" or "Committee"), (collectively, the "Defendants"), for breach of their fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*., and related breaches of applicable law beginning six years prior to the date this action is filed and continuing to the date of judgment, or such earlier date that the Court determines is appropriate and just ("Class Period"), and alleges:

**JURISDICTION AND VENUE**

1. This action arises under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

2. This Court has subject-matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, because this action presents federal questions arising under ERISA, including claims for breach of fiduciary duty and other violations of ERISA §§ 404, 405, and 409 (29 U.S.C. §§ 1104, 1105, and 1109).

3. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because the ERISA plan is administered in this District, Defendants reside or may be found in this District, and a substantial part of the events or omissions giving rise to the claims occurred within this District.

4. Plaintiff is *sui juris* and a resident of Broward County, Florida.

5. Plaintiff brings this action on behalf of the Plan pursuant to ERISA §§ 409 and 502(a)(2) for losses sustained by the Plan and its participants.

**PARTIES**

6. Plaintiff is and at all times relevant was, a participant in and beneficiary of the Plan, an employee benefit plan governed by ERISA, 29 U.S.C. § 1001 *et seq.* Plaintiff brings this action in a representative capacity on behalf of the Plan and all similarly situated participants and beneficiaries pursuant to 29 U.S.C. §§ 1132(a)(2) and (a)(3) and Federal Rule of Civil Procedure 23.

7. Defendant Rick Case Enterprises, Inc. a/k/a Rick Case Automotive Group[1] (the "Corporation") is a corporation organized and existing under the laws of State of Florida with its

---

[1] Rick Case Automotive Group is registered as a fictitious name with the Florida Secretary of State.

principal place of business in Sunrise, Florida. At all times relevant hereto, the Corporation was the Plan Sponsor and a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), having exercised discretionary authority and control over the management and administration of the Plan and its assets.

8. At all times material hereto, Defendant, Rita M. Case, served as a member of the Board of Directors of Rick Case Enterprises, Inc., and exercised oversight and control over the corporation's management and decision-making. Upon information and belief, Rita M. Case also held the position of President of the Corporation and acted in such capacity during the period relevant to this action.

9. Defendant, Darren Stokes, served as a fiduciary of the Plan, participated in the management of its assets, communicated with participants in the Plan or otherwise exercised discretionary control over Plan administration or investments during the relevant period.

9. The full composition of the Board of Directors of Rick Case Enterprises, Inc. during the relevant period is not publicly disclosed and is uniquely within the knowledge and possession of Defendants. Accordingly, Plaintiff identifies as Defendants "John Doe Directors 1-5," whose true names and capacities are presently unknown, who served as members of the Board of Directors of Rick Case Enterprises, Inc. as of the dates material to this action. Plaintiff will amend this Complaint to substitute the true names of these individuals once their identities are ascertained through discovery.

10. At all times material hereto, Rick Case Enterprises, Inc. maintained a Retirement Plan Committee responsible for the administration, oversight, investment selection, monitoring, and management of the Corporation's employee retirement plan(s), including but not limited to the 401(k) Plan that is the subject of this litigation.

11. Upon information and belief, the members of this committee exercised discretionary authority or control with respect to the management of the Plan and its assets.

12. The identities of the individuals who served on the Retirement Plan Committee during the relevant period are not publicly available and are uniquely within the knowledge of Defendants. Accordingly, Plaintiffs identify as Defendants "John Doe Committee Members 1–10," the presently unknown members of the Retirement Plan Committee of Rick Case Enterprises, Inc. Plaintiffs will amend this Complaint to substitute the true names of these committee members once their identities are determined through discovery.

13. At all times material hereto, each Defendant acted as a fiduciary under ERISA by exercising discretionary authority, control, or responsibility over the management, administration, or disposition of Plan assets and owed duties of loyalty, prudence, and adherence to Plan documents as required by ERISA § 1404(a)(1), 29 U.S.C. § 1104(a)(1).

**NATURE OF THE ACTION**

14. This is a class action brought under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"), on behalf of the Plan and all participants and beneficiaries of the Plan during the relevant period.

15. This action is brought pursuant to ERISA § 502(a)(2) to recover losses to the Plan (and participants in the Plan) as a result of Defendants' breaches of fiduciary duties of loyalty and prudence, to obtain equitable and remedial relief as provided by ERISA §§ 409 and 502, and to restore to the Plan and its participants all losses resulting from Defendants' misconduct.

16. Specifically, Plaintiff alleges that Defendants failed to discharge their fiduciary obligations solely in the interest of Plan participants and beneficiaries, and instead caused or permitted the plan to:

(a) pay excessive recordkeeping, administrative, and investment-management fees;

(b) retain underperforming or imprudent investment options when superior, lower-cost alternatives were available;

(c) fail to adequately monitor and remove imprudent fiduciaries who continued such practices to the detriment of participants; and

(d) fail to conduct a prudent and independent review of the administrative services agreement to identify, negotiate, and eliminate any excessive, unreasonable, or avoidable plan administrative fees.

17. Through this action, Plaintiff seeks to enforce ERISA's fiduciary standards, restore Plan losses and participant losses, obtain appropriate injunctive and equitable relief, and ensure that Defendants and their successors comply with ERISA going forward.

## FACTUAL ALLEGATIONS

18. The Plan is a defined contribution plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34). The Plan allows participants to direct the investment of their individual accounts among a menu of investment options selected and monitored by Defendants.

19. At all relevant times, Defendants exercised discretionary authority over the management and administration of the Plan, including, but not limited to the selection and monitoring of investment options, the negotiation of service-provider fees, and the disclosure of relevant information to participants.

20. ERISA imposes strict fiduciary duties of loyalty and prudence, requiring fiduciaries to act "solely in the interest of the participants and beneficiaries" and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like

capacity and familiar with such matters would use." ERISA § 404(a)(1)(A)–(B), 29 U.S.C. § 1104(a)(1)(A)–(B).

21. Defendants breached these duties by failing to prudently monitor Plan investments and record-keeping fees, resulting in millions of dollars in unreasonable and excessive costs or loss of value of investments borne directly by participants' accounts.

22. Reasonable and prudent fiduciaries of comparable plans regularly benchmark fees, conduct a prudent and independent review of the administrative services agreement to identify, negotiate, and eliminate any excessive, unreasonable, or avoidable plan administrative fees, solicit competitive bids, and remove imprudent investments—but Defendants failed to take these actions despite internal and/or publicly available data showing the Plan was paying materially higher fees, thereby exposing participants to losses and achieving lower returns than peer plans of similar size.

23. As a direct and proximate result of Defendants' fiduciary breaches, the Plan and its participants suffered substantial losses, including loss of principal during the 2022-2023 transition, lost investment earnings and diminished account balances.

24. Pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2), Defendants are personally liable to make good to the Plan all losses resulting from their breaches, to restore all profits Defendants made through use of Plan assets, and to provide all other equitable and remedial relief deemed appropriate by the Court.

## FACTUAL ALLEGATIONS – PLAN CONVERSION AND UNEXPLAINED LOSS OF ASSETS

25. On or about December 15, 2022, the Plan deconverted from Empower Retirement and transitioned its recordkeeping and administrative services to Principal Financial Group ("Principal").

26. As part of the deconversion, all Plan assets were transferred out of Empower on or about December 15, 2022, at which time participants' accounts entered a blackout period during which no participant could make changes or access account balances.

27. On or about January 3, 2023, Principal received the transferred Plan assets. Upon receipt, participants' account balances reflected an approximate nine percent (9%) reduction in total value compared to their balances immediately prior to transfer.

28. At the time of the transfer, Plaintiff was 100% invested in the MassMutual SAGIC Diversified II Fund, a guaranteed, stable-value investment vehicle designed to preserve principal and protect against market loss. Stable-value funds such as the MassMutual SAGIC Diversified II are contractually guaranteed to preserve principal; any reduction in value suggests mismanagement, improper valuation, or unauthorized application of market-value adjustments.

29. Following discovery of the shortfall, Plaintiff communicated with other Plan participants who reported experiencing identical nine percent (9%) reductions, indicating a systemic loss affecting over 770 participants.

30. Neither Empower**,** Principal, Defendants nor the Plan Sponsor, Rick Case Enterprises, Inc.**,** has provided a coherent or documented explanation for the missing funds. Empower directed participants to contact Darren Stokes, Vice President of Human Resources for Rick Case Enterprises, who offered inconsistent and contradictory explanations, including:

(a) that the missing funds would be "returned";

(b) that a "Market Value Adjustment (MVA) fee" was imposed by the insurance company; and

(c) that the losses were attributable to "market fluctuations" caused by investment activity undertaken by the Plan Sponsor during the blackout period.

31. None of these explanations have been substantiated with documentation, and no corrective action or reimbursement has been made to restore the lost value.

32. Additionally, the Plan Sponsor represented that, upon transition to Principal, participants' balances would be automatically invested into age-based target-date funds consistent with the Plan's Qualified Default Investment Alternative (QDIA) designation. Contrary to these representations, when Principal received the funds on January 3, 2023, they were instead invested into a diversified mix of mutual funds inconsistent with the QDIA mandate.

33. Participants, including Plaintiff, were not granted access to their accounts until January 9, 2023, several days after the purported end of the blackout period, further evidencing a failure of oversight and prudent administration during the transition.

34. The unexplained reduction in value, the deviation from the designated QDIA, and the lack of transparency regarding the handling of Plan assets during the blackout period constitute breaches of fiduciary duty under ERISA §§ 404(a)(1)(A)–(B), 29 U.S.C. § 1104(a)(1)(A)–(B), by the Plan fiduciaries, service providers, and Plan Sponsor.

35. The breaches described herein were systemic, not isolated, and affected numerous participants. Plaintiff brings this action to redress injuries suffered by the Plan and its participants collectively

**ERISA'S FIDUCIARY STANDARDS**

36. ERISA imposes strict fiduciary duties of loyalty and prudence upon the Defendants as fiduciaries of the Plan. Section 404(a) of ERISA, 29 U.S.C. § 1104(a), states, in relevant part, as follows:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and -
>
> (A) for the exclusive purpose of

> (i) providing benefits to participants and their beneficiaries; and
> (ii) defraying reasonable expenses of administering the plan;
>
> [and]
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

37. Under 29 U.S.C. § 1103(c)(l), with certain exceptions not relevant here, the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in a plan and their beneficiaries and defraying reasonable expenses of administering the plan.

38. Under ERISA, parties that exercise any authority or control over plan assets, including the selection of plan investments and service providers, are fiduciaries and must act prudently and solely in the interest of participants in a plan.

39. ERISA's fiduciary duties are "the highest known to the law" and must be performed "with an eye single" to the interests of participants. *Donovan v. Bierwirth*, 680 F.2d 263, 271, 272 n. 8 (2d Cir. 1982).

40. ERISA also imposes explicit co-fiduciary liabilities on plan fiduciaries. Section 405(a) of ERISA, 29 U.S.C. § 1105(a) provides a cause of action against a fiduciary for knowingly participating in a breach by another fiduciary and knowingly failing to cure any breach of duty. ERISA states, in relevant part, as follows:

> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or
>
> (2) if, by his failure to comply with section 404(a)(l) in the administration of his specific responsibilities which give risk to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

41. Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action to enforce a breaching fiduciary's liability to the plan under Section 409, 29 U.S.C. § 1109. Section 409(a) of ERISA provides, in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

**CLASS ALLEGATIONS**

42. This action is brought as a class action by Plaintiff on behalf of himself and the following proposed Class:

> All participants and beneficiaries in the Rick Case Enterprises, Inc. 401(k) Plan (the "Plan") at any time on or after the date of filing, and continuing to the date of judgment, or such earlier date that the Court determines is appropriate and just (the "Class Period"), including any beneficiary of a deceased person who was a participant in the Plan at any

time during the Class Period.

Excluded from the Class are Defendants and the Judge to whom this case is assigned or any other judicial officer having responsibility for this case who is a beneficiary.

43. This action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

44. **Numerosity**. Plaintiffs are informed and believe that there are over 770 Class members throughout the United States. As a result, the members of the Class are so numerous that their individual joinder in this action is impracticable.

45. **Commonality**. There are numerous questions of fact and/or law that are common to Plaintiffs and all the members of the Class, including, but not limited to the following:

> (a) Whether Defendants failed and continue to fail to discharge their duties with respect to the Plan solely in the interest of the Plan's participants for the exclusive purpose of providing benefits to participants and their beneficiaries;
>
> (b) Whether Defendants breached their fiduciary duties under ERISA by failing to defray the reasonable expenses of administering the Plan; and
>
> (c) Whether and what form of relief should be afforded to Plaintiffs and the Class.

46. **Typicality.** Plaintiffs, who are members of the Class, have claims that are typical of all of the members of the Class. Plaintiffs' claims and all of the Class members' claims arise out of the same uniform course of conduct by Defendants and arise under the same legal theories that are applicable as to all other members of the Class. In addition, Plaintiff seeks relief for the Plan under the same remedial theories that are applicable as to all other members of the Class.

47. **Adequacy of Representation.** Plaintiff will fairly and adequately represent the interests of the members of the Class. Plaintiffs have no conflicts of interest with or interests that

are any different from the other members of the Class. Plaintiffs have retained competent counsel experienced in class action and other complex litigation.

48. **Potential Risks and Effects of Separate Actions.** The prosecution of separate actions by or against individual Class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

49. **Predominance.** Common questions of law and fact predominate over questions affecting only individual Class members, and the Court, as well as the parties, will spend the vast majority of their time working to resolve these common issues. Indeed, virtually the only individual issues of significance will be the exact amount of damages recovered by each Class member, the calculation of which will ultimately be a ministerial function and which does not bar Class certification.

50. **Superiority**. A class action is superior to all other feasible alternatives for the resolution of this matter. The vast majority of, if not all, Class members are unaware of Defendants' breaches of fiduciary duty and prohibited transactions such that they will never bring suit individually. Furthermore, even if they were aware of the claims they have against Defendants, the claims of virtually all Class members would be too small to economically justify individual litigation. Finally, individual litigation of multiple cases would be highly inefficient, a gross waste of the resources of the courts and of the parties and potentially could lead to inconsistent results that would be contrary to the interests of justice.

51. **Manageability**. This case is well-suited for treatment as a class action and easily can be managed as a class action since evidence of both liability and damages can be adduced, and proof of liability and damages can be presented, on a Class-wide basis, while the allocation and distribution of damages to Class members would be essentially a ministerial function.

52. Defendants have acted on grounds generally applicable to the Class by uniformly subjecting them to the breaches of fiduciary duty described above. Accordingly, injunctive relief, as well as legal and/or equitable monetary relief (such as disgorgement and/or restitution), along with corresponding declaratory relief, are appropriate with respect to the Class as a whole.

53. Plaintiff's counsel will fairly and adequately represent the interests of the Class and are best able to represent the interests of the Class under Rule 23(g) of the Federal Rules of Civil Procedure. Moreover, treating this case as a class action is superior to proceeding on an individual basis and there will be no difficulty in managing this case as a class action.

54. Therefore, this action should be certified as a class action under Rules 23(a) and 23(b)(1) and/or 23(b)(3) of the Federal Rules of Civil Procedure.

**COUNT I**
**(For Breach of Fiduciary Duty)**

55. Plaintiff incorporates by reference the allegations in paragraphs 1 through 54 of this Complaint as if fully set forth herein.

56. Defendants' conduct, as set forth above, violates their fiduciary duties under Sections 404(a)(1)(A), (B) and (D) of ERISA, 29 U.S.C. § 1104(a)(1)(A), (B) and (D), in that Defendants failed and continue to fail to discharge their duties with respect to the Plan solely in the interest of the Plan's participants and beneficiaries and (a) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the Plan with (b) the care, skill, prudence, and diligence under the circumstances

then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (c) by failing to act in accordance with the documents and instruments governing the Plan. In addition, as set forth above, Defendants violated their respective fiduciary duties under ERISA to monitor other fiduciaries of the Plan in the performance of their duties.

57. To the extent that any of the Defendants did not directly commit any of the foregoing breaches of fiduciary duty, at the very minimum, each such Defendant is liable under 29 U.S.C. § 1105(a) because he, she, they or it was a co-fiduciary and knowingly participated in (or concealed) a breach by another fiduciary, enabled another fiduciary to commit breaches of fiduciary duty in the administration of his, her, their or its specific responsibilities giving rise to his, her, their or its fiduciary status and/or knowingly failing to cure a breach of fiduciary duty by another fiduciary and/or failed to take reasonable efforts to remedy the breach.

58. As a direct result of Defendants' breaches of duties, the Plan has suffered losses and damages.

59. Pursuant to Sections 409 and 502(a)(2) of ERISA, 29 U.S.C. §§ 1109 and 1132, Defendants are liable to restore to the Plan (and its participants) the losses that have been suffered as a direct result of

Defendants' breaches of fiduciary duty and are liable for damages and any other available equitable or remedial relief, including prospective injunctive and declaratory relief, and attorneys' fees, costs and other recoverable expenses of litigation.

**COUNT II**
**(Failure to Monitor Fiduciaries and Co-Fiduciary Breaches)**

60. Plaintiff incorporates the allegations in paragraphs 1 through 54 of this Complaint as if fully set forth herein.

61. Defendants are responsible for appointing, overseeing, and removing members of the Administrative Committee, who, in turn, are responsible for appointing, overseeing, and removing members of the Committee.

62. In light of its appointment and supervisory authority, Defendants had a fiduciary responsibility to monitor the performance of the Committee and its members including but not limited to conducting a prudent and independent review of the administrative services agreement to identify, negotiate, and eliminate any excessive, unreasonable, or avoidable plan administrative fees, and the Administrative Committee had a fiduciary responsibility to monitor the performance of the members of the Committee.

63. A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of Plan assets, and must take prompt and effective action to protect the Plan and participants when they are not.

64. To the extent that fiduciary monitoring responsibilities of Defendants or the Committee was delegated, each Defendants' monitoring duty included an obligation to ensure that any delegated tasks were being performed prudently and loyally.

65. Defendants and the Committee breached their fiduciary monitoring duties by, among other things:

(a) Failing to monitor and evaluate the performance of their appointees or have a system in place for doing so, standing idly by as the Plan suffered significant losses as a result of the appointees' imprudent actions and omissions with respect to the Plan;

(b) Failing to monitor their appointees' fiduciary processes, which would have alerted a prudent fiduciary to the breaches of fiduciary duties described herein, in clear violation of ERISA;

(c) Failing to remove appointees whose performances were inadequate in that they continued to maintain imprudent, excessively costly, and poorly

performing investments within the Plan, all to the detriment of the Plan and its participants' retirement savings.; and
(d) Failing to conduct a prudent and independent review of the administrative services agreement to identify, negotiate, and eliminate any excessive, unreasonable, or avoidable plan administrative fees.

66. As a consequence of these breaches of the fiduciary duty to monitor, the Plan suffered substantial losses. Had Defendants discharged their fiduciary monitoring duties prudently as described above, the losses suffered by the Plan would have been minimized or avoided. Therefore, as a direct result of the breaches of fiduciary duties alleged herein, the Plan and its participants have lost millions of dollars of retirement savings.

67. Defendants are liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the breaches of fiduciary duties alleged in this Count, to restore to the Plan any lost profits made through use of Plan assets and are subject to other equitable or remedial relief as appropriate.

68. Each of the Defendants also knowingly participated in the breaches of the other Defendants, knowing that such acts constituted breaches; enabled the other Defendants to commit breaches by failing to lawfully discharge their own fiduciary duties; and knew of the breaches by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breaches. Defendants, thus, are liable for the losses caused by the breaches of their co-fiduciaries under 29 U.S.C. § 1105(a).

**COUNT III**
**(In the Alternative, Liability for Knowing Breach of Trust)**

69. Plaintiff incorporates the allegations in paragraphs 1 through 54 of this Complaint as if fully set forth herein.

70. In the alternative, to the extent that any of the Defendants are not deemed a fiduciary or co-fiduciary under ERISA, each such Defendant should be enjoined or otherwise subject to equitable relief as a non-fiduciary from further participating in a knowing breach of trust.

71. To the extent any of the Defendants are not deemed to be fiduciaries and/or are not deemed to be acting as fiduciaries for any and all applicable purposes, any such Defendants are liable for the conduct at issue here, since all Defendants possessed the requisite knowledge and information to avoid the fiduciary breaches at issue here and knowingly participated in breaches of fiduciary duty by permitting the Plan to offer a menu of imprudent investment options and pay excessive recordkeeping and administrative fees, all of which was unjustifiable in light of the size and characteristics of the Plan.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, and all others similarly situated, demands judgment against Defendants for the following relief:

(a). certification of the Class pursuant to Fed. R. Civ. P. 23;

(b). appointment of the undersigned as counsel for the Class;

(c). declaratory and injunctive relief pursuant to Section 502 of ERISA, 29 U.S.C. § 1132, as detailed above;

(d). equitable, legal or remedial relief to return all losses to the Plan and/or for restitution and/or damages as set forth above, plus all other equitable or remedial relief as the Court may deem appropriate pursuant to Sections 409 and 502 of ERISA, 29 U.S.C. §§ 1109 and 1132;

(e). pre-judgment and post-judgment interest at the maximum permissible rates, whether at law or in equity;

(f). attorneys' fees, costs and other recoverable expenses of litigation; and

(g). such further and additional relief to which the Class may be justly entitled and the Court deems appropriate and just under all of the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiff, Romeo Hebert, an individual, pursuant to Rule 38, Federal Rules of Civil Procedure, demands a trial by jury of all issues so triable.

DATED: Friday, February 27, 2026

Respectfully submitted,

*/s/ Robert W. Murphy*
ROBERT W. MURPHY
440 Premier Circle, Suite 240
Charlottesville, VA 22901
Telephone: (434)328-3100 / (954) 763-8660
Fax: (434)328-3101 / (954) 763-8607
rwmurphy@lawfirmmurphy.com

Walter J. Mathews, Esq.
WALTER J. MATHEWS, P.A.
219 Davie Boulevard
Fort Lauderdale, Florida 32215
Telephone: (954) 463-1929
wjm@mathewsllp.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 27, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being furnished, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic filing.

*/s/ Robert W. Murphy*
Attorney