**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

ROMEO HEBERT, individually and as representative of a class of similarly situated persons on behalf of RICK CASE ENTERPRISES, INC. 401(K) PLAN,

Case No.: 25-cv-62255

Plaintiff,

vs.

RICK CASE ENTERPRISES, INC., RITA M. CASE, DARREN W. STOKES, JOHN DOE DIRECTORS 1-10, JOHN DOE COMMITTEE MEMBERS 1-10,

Defendants.
_________________________________________/

**ANSWER AND AFFIRMATIVE AND OTHER DEFENSES OF RICK CASE ENTERPRISES, INC., RITA M. CASE, AND DARREN W. STOKES**

Defendants Rick Case Enterprises, Inc. ("Enterprises"), Rita M. Case ("Case"), and Darren W. Stokes ("Stokes"), by and through their undersigned counsel, for their answer and defenses to the amended complaint, state as follows:

**JURISDICTION AND VENUE**

1. This action arises under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et seq*. ("ERISA").

**ANSWER:** Enterprises, Case, and Stokes admit the allegation of paragraph 1.

2. This Court has subject-matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, because this action presents federal questions arising under ERISA, including claims for breach of fiduciary duty and other violations of ERISA §§ 404, 405, and 409 (29 U.S.C. §§ 1104, 1105, and 1109).

**ANSWER:** Enterprises, Case, and Stokes admit that jurisdiction is conferred by 29 U.S.C. § 1132(e)(1) and 29 U.S.C. § 1331. Enterprises, Case, and Stokes deny the remaining part of the allegation of paragraph 2.

3. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because the ERISA plan is administered in this District, Defendants reside or may be found in this District, and a substantial part of the events or omissions giving rise to the claims occurred within this District.

**ANSWER:** Enterprises, Case, and Stokes admit that venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b). Enterprises, Case, and Stokes deny the remaining part of the allegation of paragraph 3.

4. Plaintiff is *sui juris* and a resident of Broward County, Florida.

**ANSWER:** Enterprises, Case, and Stokes state that they lack knowledge or information sufficient to form a belief about the truth of the allegation of paragraph 4.

5. Plaintiff brings this action on behalf of the Plan pursuant to ERISA §§ 409 and 502(a)(2) for losses sustained by the Plan and its participants.

**ANSWER:** Enterprises, Case, and Stokes admit that Plaintiff brings this action pursuant to section 502(a)(2) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(a)(2), seeking the relief that is available under section 409 of ERISA. 29 U.S.C. § 1109. Enterprises, Case, and Stokes deny the remaining part of the allegation of paragraph 5.

Further responding, Enterprises, Case, and Stokes state that Plaintiff is not entitled to the relief that is available under section 409 of ERISA. 29 U.S.C. § 1109.

## PARTIES

6. Plaintiff is and at all times relevant was, a participant in and beneficiary of (the "Plan"), an employee benefit plan governed by ERISA, 29 U.S.C. § 1001 *et seq.* Plaintiff brings this action in a representative capacity on behalf of the Plan and all similarly situated participants and beneficiaries pursuant to 29 U.S.C. §§ 1132(a)(2) and (a)(3) and Federal Rule of Civil Procedure 23.

**ANSWER:** Enterprises, Case, and Stokes admit that Plaintiff was a participant in the Rick Case Enterprises, Inc. 401(k) Plan (the "Plan"), an employee benefit plan subject to ERISA.

Enterprises, Case, and Stokes deny the remaining part of the allegation of the first sentence of paragraph 6. Enterprises, Case, and Stokes deny the allegation of the second sentence of paragraph 6.

7. Defendant Rick Case Enterprises, Inc. a/k/a Rick Case Automotive Group (the "Corporation") is a corporation organized and existing under the laws of State of Florida with its principal place of business in Sunrise, Florida. At all times relevant hereto, the Corporation was the Plan Sponsor and a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), having exercised discretionary authority and control over the management and administration of the Plan and its assets.

**ANSWER:** Enterprises, Case, and Stokes admit the allegations of paragraph 7.

8. At all times material hereto, Defendant, Rita M. Case, served as a member of the Board of Directors of Rick Case Enterprises, Inc., and exercised oversight and control over the corporation's management and decision-making. Upon information and belief, Rita M. Case also held the position of President of the Corporation and acted in such capacity during the period relevant to this action.

**ANSWER:** Enterprises, Case, and Stokes admit the allegations of paragraph 8.

9 [First paragraph numbered 9.] Defendant, Darren Stokes served as a fiduciary of the Plan, participated in the management of its assets, communicated with participants in the Plan or otherwise exercised discretionary control over Plan administration or investments during the relevant period.

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of the first numbered paragraph 9.

9. [Second paragraph numbered 9.] The full composition of the Board of Directors of Rick Case Enterprises, Inc. during the relevant period is not publicly disclosed and is uniquely within the knowledge and possession of Defendants. Accordingly, Plaintiff identifies as Defendants "John Doe Directors 1-5," whose true names and capacities are presently unknown, who served as members of the Board of Directors of Rick Case Enterprises, Inc. as of the dates material to this action. Plaintiff will amend this Complaint to substitute the true names of these individuals once their identities are ascertained through discovery.

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of the first sentence of the second numbered paragraph 9. Enterprises, Case, and Stokes deny the allegation of the second sentence of the second numbered paragraph 9. Enterprises, Case, and Stokes state that they are without knowledge sufficient to form a belief about the truth of the allegation of the third sentence of the second numbered paragraph 9.

10. At all times material hereto, Rick Case Enterprises, Inc. maintained a Retirement Plan Committee responsible for the administration, oversight, investment selection, monitoring, and management of the Corporation's employee retirement plan(s), including but not limited to the 401(k) Plan that is the subject of this litigation.

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 10.

11. Upon information and belief, the members of this committee exercised discretionary authority or control with respect to the management of the Plan and its assets.

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 11.

12. The identities of the individuals who served on the Retirement Plan Committee during the relevant period are not publicly available and are uniquely within the knowledge of Defendants. Accordingly, Plaintiffs identify as Defendants "John Doe Committee Members 1 – 10," the presently unknown members of the Retirement Plan Committee of Rick Case Enterprises, Inc. Plaintiffs will amend this Complaint to substitute the true names of these committee members once their identities are determined through discovery.

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 12.

13. At all times material hereto, each Defendant acted as a fiduciary under ERISA by exercising discretionary authority, control, or responsibility over the management, administration, or disposition of Plan assets and owed duties of loyalty, prudence, and adherence to Plan documents as required by ERISA § 1404(a)(1), 29 U.S.C. § 1104(a)(1).

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 13.

## NATURE OF THE ACTION

14. This is a class action brought under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"), on behalf of the Plan and all participants and beneficiaries of the Plan during the relevant period.

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 14.

15. This action is brought pursuant to ERISA § 502(a)(2) to recover losses to the Plan (and participants in the Plan) as a result of Defendants' breaches of fiduciary duties of loyalty and prudence, to obtain equitable and remedial relief as provided by ERISA §§ 409 and 502, and to restore to the Plan and its participants all losses resulting from Defendants' misconduct.

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 15.

16. Specifically, Plaintiff alleges that Defendants failed to discharge their fiduciary obligations solely in the interest of Plan participants and beneficiaries, and instead caused or permitted the plan to:

(a) pay excessive recordkeeping, administrative, and investment-management fees;

(b) retain underperforming or imprudent investment options when superior, lower- cost alternatives were available;

(c) fail to adequately monitor and remove imprudent fiduciaries who continued such practices to the detriment of participants; and

(d) fail to conduct a prudent and independent review of the administrative services agreement to identify, negotiate, and eliminate any excessive, unreasonable, or avoidable plan administrative fees.

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 16.

17. Through this action, Plaintiff seeks to enforce ERISA's fiduciary standards, restore Plan losses and participant losses, obtain appropriate injunctive and equitable relief, and ensure that Defendants and their successors comply with ERISA going forward.

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of paragraph 17.

## FACTUAL ALLEGATIONS

18. The Plan is a defined contribution plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34). The Plan allows participants to direct the investment of their individual accounts among a menu of investment options selected and monitored by Defendants.

**ANSWER:** Enterprises, Case, and Stokes admit the allegation in the first sentence of paragraph 18 that the Plan is a defined contribution plan within the meaning of section 3(34), 29

U.S.C. § 1002(34). Enterprises, Case, and Stokes admit that the Plan allows participants to direct the investment of their individual accounts among a menu of investment options. Enterprises, Case, and Stokes deny the remaining part of the allegation in the second sentence of paragraph 18.

19. At all relevant times, Defendants exercised discretionary authority over the management and administration of the Plan, including, but not limited to the selection and monitoring of investment options, the negotiation of service-provider fees, and the disclosure of relevant information to participants.

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of paragraph 19.

20. ERISA imposes strict fiduciary duties of loyalty and prudence, requiring fiduciaries to act "solely in the interest of the participants and beneficiaries" and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." ERISA § 404(a)(1)(A)–(B), 29 U.S.C. § 1104(a)(1)(A)–(B).

**ANSWER:** Enterprises, Case, and Stokes admit that section 404(a)(1)(A) and section 404(a)(1)(B) of ERISA, 29 U.S.C. § 1104(a)(1)(A), (B), impose a legal obligation on a fiduciary of an employee benefit plan to discharge its duties "solely in the interest of the participants and beneficiaries" and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." Enterprises, Case, and Stokes deny the remaining part of the allegation of paragraph 20.

21. Defendants breached these duties by failing to prudently monitor Plan investments and record-keeping fees, resulting in millions of dollars in unreasonable and excessive costs or loss of value of investments borne directly by participants' accounts.

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of paragraph 21.

22. Reasonable and prudent fiduciaries of comparable plans regularly benchmark fees, conduct a prudent and independent review of the administrative services agreement to identify, negotiate, and eliminate any excessive, unreasonable, or avoidable plan administrative fees, solicit competitive bids, and remove imprudent investments—but Defendants failed to take these actions despite internal and/or publicly available data showing the Plan was paying materially higher fees, thereby exposing participants to losses and achieving lower returns than peer plans of similar size.

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of paragraph 22.

23. As a direct and proximate result of Defendants' fiduciary breaches, the Plan and its participants suffered substantial losses, including loss of principal during the 2022-2023 transition, lost investment earnings and diminished account balances.

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of paragraph 23.

24. Pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2), Defendants are personally liable to make good to the Plan all losses resulting from their breaches, to restore all profits Defendants made through use of Plan assets, and to provide all other equitable and remedial relief deemed appropriate by the Court.

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of paragraph 24.

## FACTUAL ALLEGATIONS – PLAN CONVERSION AND UNEXPLAINED LOSS OF ASSETS

25. On or about December 15, 2022, the Plan deconverted from Empower Retirement and transitioned its recordkeeping and administrative services to Principal Financial Group ("Principal").

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 25.

26. As part of the deconversion, all Plan assets were transferred out of Empower on or about December 15, 2022, at which time participants' accounts entered a blackout period during which no participant could make changes or access account balances.

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 26. Further responding, Enterprises, Case, and Stokes state that on or about December 15, 2022 a transfer of assets of the Plan commenced, from the custody of a trustee affiliated with Great-West Life & Annuity Insurance Company, d/b/a Empower Retirement, to the custody of Delaware Charter Guarantee & Trust Company, d/b/a Principal Trust Company, as trustee, and that a "blackout period" commenced during which a participant could not make changes to the investments in which his or her Plan account balance was invested or access his or her account balance for the purposes of authorizing distributions or changes to investments.

27. On or about January 3, 2023, Principal received the transferred Plan assets. Upon receipt, participants' account balances reflected an approximate nine percent (9%) reduction in total value compared to their balances immediately prior to transfer.

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of paragraph 27. Further responding, Enterprises, Case, and Stokes state that on or about January 3, 2023, Delaware Charter Guarantee & Trust Company, d/b/a Principal Trust Company, received the assets of the Plan transferred from the prior trustee.

28. At the time of the transfer, Plaintiff was 100% invested in the MassMutual SAGIC Diversified II Fund, a guaranteed, stable-value investment vehicle designed to preserve principal and protect against market loss. Stable-value funds such as the MassMutual SAGIC Diversified II are contractually guaranteed to preserve principal; any reduction in value suggests mismanagement, improper valuation, or unauthorized application of market-value adjustments.

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 28.

29. Following discovery of the shortfall, Plaintiff communicated with other Plan participants who reported experiencing identical nine percent (9%) reductions, indicating a systemic loss affecting over 770 participants.

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 29.

30. Neither Empower, Principal, Defendants nor the Plan Sponsor, Rick Case Enterprises, Inc., has provided a coherent or documented explanation for the missing funds. Empower directed participants to contact Darren Stokes, Vice President of Human Resources for Rick Case Enterprises, who offered inconsistent and contradictory explanations, including:

(a) that the missing funds would be "returned";

(b) that a "Market Value Adjustment (MVA) fee" was imposed by the insurance company; and

(c) that the losses were attributable to "market fluctuations" caused by investment activity undertaken by the Plan Sponsor during the blackout period.

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 30.

31. None of these explanations have been substantiated with documentation, and no corrective action or reimbursement has been made to restore the lost value.

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of paragraph 31.

32. Additionally, the Plan Sponsor represented that, upon transition to Principal, participants' balances would be automatically invested into age-based target-date funds consistent with the Plan's Qualified Default Investment Alternative (QDIA) designation. Contrary to these representations, when Principal received the funds on January 3, 2023, they were instead invested into a diversified mix of mutual funds inconsistent with the QDIA mandate.

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of paragraph 32**.**

33. Participants, including Plaintiff, were not granted access to their accounts until January 9, 2023, several days after the purported end of the blackout period, further evidencing a failure of oversight and prudent administration during the transition.

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of paragraph 33.

34. The unexplained reduction in value, the deviation from the designated QDIA, and the lack of transparency regarding the handling of Plan assets during the blackout period constitute breaches of fiduciary duty under ERISA §§ 404(a)(1)(A)–(B), 29 U.S.C. § 1104(a)(1)(A)–(B), by the Plan fiduciaries, service providers, and Plan Sponsor.

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of paragraph 34.

35. The breaches described herein were systemic, not isolated, and affected numerous participants. Plaintiff brings this action to redress injuries suffered by the Plan and its participants collectively

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of paragraph 35.

## ERISA'S FIDUCIARY STANDARDS

36. ERISA imposes strict fiduciary duties of loyalty and prudence upon the Defendants as fiduciaries of the Plan. Section 404(a) of ERISA, 29 U.S.C. § 1104(a), states, in relevant part, as follows:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and -
>
> (A) for the exclusive purpose of
>
> (i) providing benefits to participants and their beneficiaries; and
>
> (ii) defraying reasonable expenses of administering the plan;

[and]

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of the first sentence of paragraph 36. Enterprises, Case, and Stokes admit the allegation of the second sentence of paragraph 36.

37. Under 29 U.S.C. § 1103(c)(l), with certain exceptions not relevant here, the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in a plan and their beneficiaries and defraying reasonable expenses of administering the plan.

**ANSWER:** Enterprises, Case, and Stokes admit the allegation of paragraph 37.

38. Under ERISA, parties that exercise any authority or control over plan assets, including the selection of plan investments and service providers, are fiduciaries and must act prudently and solely in the interest of participants in a plan.

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 38. Further responding, Enterprises, Case, and Stokes state that a person who is a fiduciary of an employee benefit plan, but who is not acting in a fiduciary capacity, is not subject to the fiduciary responsibilities imposed by ERISA when not acting in a fiduciary capacity.

39. ERISA's fiduciary duties are "the highest known to the law" and must be performed "with an eye single" to the interests of participants. *Donovan v. Bierwirth*, 680 F.2d 263, 271, 272 n. 8 (2d Cir. 1982).

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 39.

Further responding, Enterprises, Case, and Stokes state that a person who is a fiduciary of an employee benefit plan is not subject to the fiduciary responsibilities imposed by ERISA when not acting in a fiduciary capacity.

40. ERISA also imposes explicit co-fiduciary liabilities on plan fiduciaries. Section 405(a) of ERISA, 29 U.S.C. § 1105(a) provides a cause of action against a fiduciary for knowingly participating in a breach by another fiduciary and knowingly failing to cure any breach of duty. ERISA states, in relevant part, as follows:

> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or
>
> (2) if, by his failure to comply with section 404(a)(l) in the administration of his specific responsibilities which give risk to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

**ANSWER:** Enterprises, Case, and Stokes admit the allegations of paragraph 40.

41. Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action to enforce a breaching fiduciary's liability to the plan under Section 409, 29 U.S.C. § 1109. Section 409(a) of ERISA provides, in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

**ANSWER:** Enterprises, Case, and Stokes admit the allegations of paragraph 41.

## CLASS ALLEGATIONS

42. This action is brought as a class action by Plaintiff on behalf of himself and the following proposed Class:

> All participants and beneficiaries in the Rick Case Enterprises, Inc. 401(k) Plan (the "Plan") at any time on or after the date of filing, and continuing to the date of judgment, or such earlier date that the Court determines is appropriate and just (the "Class Period"), including any beneficiary of a deceased person who was a participant in the Plan at any time during the Class Period.

Excluded from the Class are Defendants and the Judge to whom this case is assigned or any other judicial officer having responsibility for this case who is a beneficiary.

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of paragraph 42.

43. This action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 43.

44. **Numerosity**. Plaintiffs are informed and believe that there are over 770 Class members throughout the United States. As a result, the members of the Class are so numerous that their individual joinder in this action is impracticable.

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of paragraph 44.

45. **Commonality**. There are numerous questions of fact and/or law that are common to Plaintiffs and all the members of the Class, including, but not limited to the following:

(a) Whether Defendants failed and continue to fail to discharge their duties with respect to the Plan solely in the interest of the Plan's participants for the exclusive purpose of providing benefits to participants and their beneficiaries;

(b) Whether Defendants breached their fiduciary duties under ERISA by failing to defray the reasonable expenses of administering the Plan; and

(c) Whether and what form of relief should be afforded to Plaintiffs and the Class.

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 45.

46. **Typicality**. Plaintiffs, who are members of the Class, have claims that are typical of all of the members of the Class. Plaintiffs' claims and all of the Class members' claims arise out of the same uniform course of conduct by Defendants and arise under the same legal theories that are applicable as to all other members of the Class. In addition, Plaintiff seeks relief for the Plan under the same remedial theories that are applicable as to all other members of the Class.

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of paragraph 46.

47. **Adequacy of Representation**. Plaintiff will fairly and adequately represent the interests of the members of the Class. Plaintiffs have no conflicts of interest with or interests that

are any different from the other members of the Class. Plaintiffs have retained competent counsel experienced in class action and other complex litigation.

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of paragraph 47.

48. **Potential Risks and Effects of Separate Actions**. The prosecution of separate actions by or against individual Class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of paragraph 48.

49. **Predominance**. Common questions of law and fact predominate over questions affecting only individual Class members, and the Court, as well as the parties, will spend the vast majority of their time working to resolve these common issues. Indeed, virtually the only individual issues of significance will be the exact amount of damages recovered by each Class member, the calculation of which will ultimately be a ministerial function and which does not bar Class certification.

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of paragraph 49.

50. **Superiority**. A class action is superior to all other feasible alternatives for the resolution of this matter. The vast majority of, if not all, Class members are unaware of Defendants' breaches of fiduciary duty and prohibited transactions such that they will never bring suit individually. Furthermore, even if they were aware of the claims they have against Defendants, the claims of virtually all Class members would be too small to economically justify individual litigation. Finally, individual litigation of multiple cases would be highly inefficient, a gross waste of the resources of the courts and of the parties and potentially could lead to inconsistent results that would be contrary to the interests of justice.

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of paragraph 50.

51. **Manageability**. This case is well-suited for treatment as a class action and easily can be managed as a class action since evidence of both liability and damages can be adduced, and proof of liability and damages can be presented, on a Class-wide basis, while the allocation and distribution of damages to Class members would be essentially a ministerial function.

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of paragraph 51.

52. Defendants have acted on grounds generally applicable to the Class by uniformly subjecting them to the breaches of fiduciary duty described above. Accordingly, injunctive relief, as well as legal and/or equitable monetary relief (such as disgorgement and/or restitution), along with corresponding declaratory relief, are appropriate with respect to the Class as a whole.

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of paragraph 52.

53. Plaintiff's counsel will fairly and adequately represent the interests of the Class and are best able to represent the interests of the Class under Rule 23(g) of the Federal Rules of Civil Procedure. Moreover, treating this case as a class action is superior to proceeding on an individual basis and there will be no difficulty in managing this case as a class action.

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of paragraph 53.

54. Therefore, this action should be certified as a class action under Rules 23(a) and 23(b)(1) and/or 23(b)(3) of the Federal Rules of Civil Procedure.

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 54.

**COUNT I**
**(For Breach of Fiduciary Duty)**

55. Plaintiff incorporates by reference the allegations in paragraphs 1 through 54 of this Complaint as if fully set forth herein.

**ANSWER:** Enterprises, Case, and Stokes incorporate by reference their answers and responses to paragraphs 1 through 54 of the complaint as if fully set forth herein.

56. Defendants' conduct, as set forth above, violates their fiduciary duties under Sections 404(a)(1)(A), (B) and (D) of ERISA, 29 U.S.C. § 1104(a)(1)(A), (B) and (D), in that Defendants failed and continue to fail to discharge their duties with respect to the Plan solely in the interest of the Plan's participants and beneficiaries and (a) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the Plan with (b) the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (c) by failing to act in accordance with the documents and instruments governing the Plan. In addition, as set forth above, Defendants violated their respective fiduciary duties under ERISA to monitor other fiduciaries of the Plan in the performance of their duties.

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of paragraph 56.

57. To the extent that any of the Defendants did not directly commit any of the foregoing breaches of fiduciary duty, at the very minimum, each such Defendant is liable under 29 U.S.C. § 1105(a) because he, she, they or it was a co-fiduciary and knowingly participated in (or concealed) a breach by another fiduciary, enabled another fiduciary to commit breaches of fiduciary duty in the administration of his, her, their or its specific responsibilities giving rise to his, her, their or its fiduciary status and/or knowingly failing to cure a breach of fiduciary duty by another fiduciary and/or failed to take reasonable efforts to remedy the breach.

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 57.

58. As a direct result of Defendants' breaches of duties, the Plan has suffered losses and damages.

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 58.

59. Pursuant to Sections 409 and 502(a)(2) of ERISA, 29 U.S.C. §§ 1109 and 1132, Defendants are liable to restore to the Plan (and its participants) the losses that have been suffered as a direct result of Defendants' breaches of fiduciary duty and are liable for damages and any other available equitable or remedial relief, including prospective injunctive and declaratory relief, and attorneys' fees, costs and other recoverable expenses of litigation.

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 59.

## COUNT II
## (Failure to Monitor Fiduciaries and Co-Fiduciary Breaches)

60. Plaintiff incorporates the allegations in paragraphs 1 through 54 of this Complaint as if fully set forth herein.

**ANSWER:** Enterprises, Case, and Stokes incorporate by reference their answers and responses to paragraphs 1 through 54 of the complaint as if fully set forth herein.

61. Defendants are responsible for appointing, overseeing, and removing members of the Administrative Committee, who, in turn, are responsible for appointing, overseeing, and removing members of the Committee.

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 61.

62. In light of its appointment and supervisory authority, Defendants had a fiduciary responsibility to monitor the performance of the Committee and its members including but not limited to conducting a prudent and independent review of the administrative services agreement to identify, negotiate, and eliminate any excessive, unreasonable, or avoidable plan administrative

fees, and the Administrative Committee had a fiduciary responsibility to monitor the performance of the members of the Committee.

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 62.

63. A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of Plan assets, and must take prompt and effective action to protect the Plan and participants when they are not.

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 63.

64. To the extent that fiduciary monitoring responsibilities of Defendants or the Committee was delegated, each Defendants' monitoring duty included an obligation to ensure that any delegated tasks were being performed prudently and loyally.

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 64.

65. Defendants and the Committee breached their fiduciary monitoring duties by, among other things:

(a) Failing to monitor and evaluate the performance of their appointees or have a system in place for doing so, standing idly by as the Plan suffered significant losses as a result of the appointees' imprudent actions and omissions with respect to the Plan;

(b) Failing to monitor their appointees' fiduciary processes, which would have alerted a prudent fiduciary to the breaches of fiduciary duties described herein, in clear violation of ERISA;

(c) Failing to remove appointees whose performances were inadequate in that they continued to maintain imprudent, excessively costly, and poorly performing investments within the Plan, all to the detriment of the Plan and its participants' retirement savings.; and

(d) Failing to conduct a prudent and independent review of the administrative services agreement to identify, negotiate, and eliminate any excessive, unreasonable, or avoidable plan administrative fees.

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 65.

66. As a consequence of these breaches of the fiduciary duty to monitor, the Plan suffered substantial losses. Had Defendants discharged their fiduciary monitoring duties prudently as described above, the losses suffered by the Plan would have been minimized or avoided.

Therefore, as a direct result of the breaches of fiduciary duties alleged herein, the Plan and its participants have lost millions of dollars of retirement savings.

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of paragraph 66.

67. Defendants are liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the breaches of fiduciary duties alleged in this Count, to restore to the Plan any lost profits made through use of Plan assets and are subject to other equitable or remedial relief as appropriate.

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of paragraph 67.

68. Each of the Defendants also knowingly participated in the breaches of the other Defendants, knowing that such acts constituted breaches; enabled the other Defendants to commit breaches by failing to lawfully discharge their own fiduciary duties; and knew of the breaches by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breaches. Defendants, thus, are liable for the losses caused by the breaches of their co-fiduciaries under 29 U.S.C. § 1105(a).

**ANSWER:** Enterprises, Case, and Stokes deny the allegations of paragraph 68.

**COUNT III**
**(In the Alternative, Liability for Knowing Breach Of Trust)**

69. Plaintiff incorporates the allegations in paragraphs 1 through 54 of this Complaint as if fully set forth herein.

**ANSWER:** Enterprises, Case, and Stokes incorporate by reference their answers and responses to paragraphs 1 through 54 of the complaint as if fully set forth herein.

70. In the alternative, to the extent that any of the Defendants are not deemed a fiduciary or co-fiduciary under ERISA, each such Defendant should be enjoined or otherwise subject to equitable relief as a non-fiduciary from further participating in a knowing breach of trust.

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 70.

71. To the extent any of the Defendants are not deemed to be fiduciaries and/or are not deemed to be acting as fiduciaries for any and all applicable purposes, any such Defendants are liable for the conduct at issue here, since all Defendants possessed the requisite knowledge and information to avoid the fiduciary breaches at issue here and knowingly participated in breaches of fiduciary duty by permitting the Plan to offer a menu of imprudent investment options and pay

excessive recordkeeping and administrative fees, all of which was unjustifiable in light of the size and characteristics of the Plan.

**ANSWER:** Enterprises, Case, and Stokes deny the allegation of paragraph 71.

## AFFIRMATIVE AND OTHER DEFENSES

Without assuming the burden of proof as to any issue as to which they do not have such burden, and reserving the right to assert additional defenses, including those that become known to them in the course of this litigation, Enterprises, Case, and Stokes allege the following defenses:

### FIRST DEFENSE

Pursuant to the provisions of section 404(c) of ERISA, 29 U.S.C. § 1104(c), Enterprises, Case, and Stokes are not liable for any loss resulting from Plaintiff's exercise of control over the investment of assets in his account under the Plan. Accordingly, Plaintiff is not entitled to any remedy under section 409 of ERISA, 29 U.S.C. § 1109, by reason of Plaintiff's exercise of such control over the investment of assets in his account under the Plan.

### SECOND DEFENSE

The complaint does not allege any loss resulting from, or any profits derived from the use of Plan assets, by reason of a failure of any fiduciary, as alleged in paragraph 22 of the complaint, to "regularly benchmark fees, conduct a prudent and independent review of the administrative services agreement to identify, negotiate, and eliminate any excessive, unreasonable, or avoidable plan administrative fees, solicit competitive bids, and remove imprudent investments." Accordingly, the complaint fails to state a claim based on the allegations of paragraph 22 because the remedies under section 409 of ERISA, 29 U.S.C. § 1109, are available only if there is a resulting loss or the derivation of profits from the use of Plan assets by a fiduciary.

**THIRD DEFENSE**

The complaint does not allege any loss resulting from, or any profits derived from the use of Plan assets, by reason of the occurrence of a "blackout period" as alleged in paragraph 26 of the complaint. Accordingly, the complaint fails to state a claim based on the allegations of paragraph 26 because the remedies under section 409 of ERISA, 29 U.S.C. § 1109, are available only if there is a resulting loss or the derivation of profits from the use of Plan assets by a fiduciary of the Plan..

**FOURTH DEFENSE**

The complaint does not allege any loss resulting from, or any profits derived from the use of Plan asset, by reason of the investment of Plan accounts into a "diversified mix of mutual funds inconsistent with the QDIA [qualified default investment] mandate," as alleged in paragraph 32 of the complaint. Accordingly, the complaint fails to state a claim based on the allegations of paragraph 32 because the remedies under section 409 of ERISA, 29 U.S.C. § 1109, are available only if there is a resulting loss or the derivation of profits from the use of Plan assets by a fiduciary of the Plan.

**FIFTH DEFENSE**

Plaintiff has not suffered an injury in fact that is concrete, particularized, and actual or imminent by reason of the occurrence of a "blackout period" as alleged in paragraph 26 of the complaint. Accordingly, Plaintiff lacks standing under Article III of the United States Constitution to bring an action for relief relating to the "blackout period" and therefore this Court lacks jurisdiction to grant relief based on the allegations of paragraph 26.

**SIXTH DEFENSE**

Plaintiff has not suffered an injury in fact that is concrete, particularized, and actual or imminent by reason of the investment of Plan accounts into a "diversified mix of mutual funds

inconsistent with the QDIA [qualified default investment] mandate," as alleged in paragraph 32 of the complaint. Accordingly, Plaintiff lacks standing under Article III of the United States Constitution to bring an action for relief relating to the investment of Plan accounts into a "diversified mix of mutual funds inconsistent with the QDIA [qualified default investment] mandate" and therefore this Court lacks jurisdiction to grant relief based on the allegations of paragraph 32.

**PRAYER FOR RELIEF**

WHEREFORE, Enterprises, Case, and Stokes pray for the following relief:

(A) That the Plaintiff take nothing on the claims alleged in his complaint and that this Court enter judgment in favor of Enterprises, Case, and Stokes and against the Plaintiff;

(B) That this Court award Enterprises, Case, and Stokes their attorneys' fees and costs in defending this action, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1); and

(C) That this Court grant Enterprises, Case, and Stokes such other and further relief as the Court deems just and proper.

DATED: March 13, 2026

*s/ Andrew M. Gordon*

Andrew M. Gordon
Florida Bar No.: 68886
agordon@hinshawlaw.com
Lauren D. Swanson
Florida Bar No.: 1011451
lswanson@hinshawlaw.com
HINSHAW & CULBERTSON LLP
201 East Las Olas Boulevard, Suite 1450
Ft. Lauderdale, FL 33301
Telephone: 954-467-7900
Facsimile: 954-467-1024
Secondary: ablitz@hinshawlaw.com
*Attorneys for Defendants, Rick Case Enterprises, Inc., Rita M. Case, and Darren W. Stokes*

James Harbert
Illinois Bar No. 3128432
jharbert@hinshawlaw.com
Anthony E. Antognoli
Illinois Bar No. 6271873
aantognoli@hinshawlaw.com
HINSHAW & CULBERTSON LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000
Facsimile: 312-704-3000
*Attorneys for Defendants, Rick Case Enterprises, Inc., Rita M. Case, and Darren W. Stokes*