**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

ROMEO HEBERT, individually and as representative of a class of similarly situated persons on behalf of the RICK CASE ENTERPRISES, INC. 401(K) PLAN,

Plaintiff,

v.

RICK CASE ENTERPRISES, INC. 401(K) PLAN, RITA M. CASE, DARREN W. STOKES, JOHN DOE DIRECTORS 1-10, JOHN DOE COMMITTEE MEMBERS 1-10, RICK CASE ENTERPRISES, INC., *et al.*,

Defendants.
_______________________________________/

**Case No. 25-62255-CIV-SINGHAL**

**CLASS ACTION**

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, ROMEO HEBERT ("Plaintiff" or "Class Representative"), individually and on behalf of the proposed Settlement Class, by and through undersigned counsel and pursuant to Rule 23(e), Federal Rules of Civil Procedure, and Local Rule 7.1, moves the Court for entry of an order that: (1) preliminarily approves the Class Action Settlement Agreement ("Settlement Agreement" or "Agreement") between Plaintiff and Defendants, RICK CASE ENTERPRISES, INC., RICK CASE ENTERPRISES, INC. 401(K) PLAN, RITA M. CASE, DARREN W. STOKES, JOHN DOE DIRECTORS 1-10, and JOHN DOE COMMITTEE MEMBERS 1-10 (collectively, "Defendants" or "Rick Case"); (2) conditionally certifies the Settlement Class for settlement purposes only; (3) appoints Plaintiff as Settlement Class Representative and Robert W. Murphy, Esq. and Walter J. Mathews, Esq. as Settlement Class Counsel; (4) appoints American Legal Claim Services, LLC as Settlement Administrator; (5) approves the form and manner of notice to the Settlement Class; (6) stays the Action and preliminarily enjoins the prosecution of Released

Claims; and (7) schedules the Approval Hearing. Defendants do not oppose the relief requested. In support, Plaintiff states:[1]

## I. INTRODUCTION

This is a class action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq.*, brought on behalf of participants and beneficiaries of the Rick Case Enterprises, Inc. 401(k) Plan (the "Plan"). Plaintiff alleges that Defendants breached their fiduciary duties in connection with a change of the Plan's recordkeeper, which caused participant balances invested in the MassMutual SAGIC Diversified II Fund (the "SAGIC Fund") to be reduced by a market value adjustment. After arm's-length negotiations between experienced counsel, the Parties have agreed to resolve the Action on a class-wide basis through a non-reversionary common fund of $209,000.00 for the benefit of approximately 111 Class Members. No Class Member must file a claim to be paid: current Plan participants will receive a direct deposit to their Plan accounts, and former participants will receive a check.

The Settlement is fair, reasonable, and adequate, and readily satisfies the standard for preliminary approval under Rule 23(e)(1)(B). Plaintiff therefore requests that the Court enter the proposed Preliminary Approval Order attached to the Settlement Agreement as Exhibit A. The Settlement Agreement, with its exhibits, is attached as **Exhibit 1**. Also submitted in support are the Declaration of Robert W. Murphy (**Exhibit 2**), the Declaration of Walter J. Mathews (**Exhibit 3**), the Declaration of Romeo Hebert (**Exhibit 4**), and the Declaration of Brendan A. Sweeney, Esq. as to Prevailing Market Rate (**Exhibit 5**).

---

[1] Unless otherwise defined, capitalized terms have the meanings given in the Settlement Agreement. Citations to "Agreement §__" are to the numbered sections of the Settlement Agreement.

## II. BACKGROUND

### A. The Claims and Procedural History

Plaintiff is a participant in the Plan, a defined contribution plan sponsored by Rick Case Enterprises, Inc. for its employees. On November 7, 2025, Plaintiff filed the Complaint [D.E. 1] on behalf of himself, the Plan, and a class of similarly situated participants and beneficiaries, alleging that Defendants breached the fiduciary duties of prudence and loyalty imposed by ERISA, 29 U.S.C. §1104(a)(1), and seeking to recover Plan losses under 29 U.S.C. §§1109(a) and 1132(a)(2).

In summary, the Complaint alleges that the Plan offered the SAGIC Fund, a stable value investment option, to participants; that in or about December 2022, Defendants changed the Plan's recordkeeper from MassMutual/Empower to Principal; and that the change triggered a market value adjustment under the terms of the SAGIC Fund group annuity contract that was charged against the accounts of participants invested in that fund (the "market value adjustment loss" or "MVAL"). Plaintiff alleges that a prudent fiduciary would have avoided or mitigated the MVAL - for example, by timing the transition differently, electing an installment or book-value payout, or negotiating with the issuer - and that the affected participants, rather than the Plan sponsor, bore the loss. Defendants deny all of the allegations, deny that they breached any duty, and deny that the Plan or any participant suffered a compensable loss. Agreement, Recital B.

After filing of the Complaint, the parties began earnest settlement discussions. Before and during settlement discussions, Defendants produced Plan-level information bearing on liability, class size, and damages, including the identity of the affected participants and the amount of the market value adjustment charged to each. Murphy Decl. ¶¶4-5. Those disclosures, together with counsel's independent investigation, permitted Class Counsel to evaluate the strengths and weaknesses of the claims and the range of recoverable losses. *Id.*

### B. The Settlement Negotiations

The Settlement is the product of extensive arm's-length negotiations between counsel experienced in complex class litigation. Agreement, Recital D, §8.3. The Parties reached agreement on the material terms and thereafter negotiated the Settlement Agreement and its exhibits over the course of several weeks. Murphy Decl. ¶6. Attorney's fees were not negotiated until the relief to the Class had been agreed upon.

## III. SUMMARY OF THE SETTLEMENT

### A. The Settlement Class

The Settlement Class is defined as:

> All participants and beneficiaries in the Rick Case Enterprises, Inc. 401(k) Plan (the "Plan") at any time during the period from December 15, 2022 through the date of entry of the Preliminary Approval Order (the "Class Period"), and who had funds invested in MassMutual SAGIC Diversified II Fund which were reduced by a market value adjustment. The "Class" shall include any beneficiary of a deceased person who was a participant in the Plan and who had funds invested in MassMutual SAGIC Diversified II Fund which were reduced by a market value adjustment.

Agreement, Definitions ¶3. Defendants represent and warrant that the Class consists of approximately 111 members. *Id.* If the actual number of Class Members exceeds that figure, the Settlement Fund increases proportionately under a "true-up" formula. *Id.* §1.1(b).

### B. Monetary Relief and Plan of Allocation

Defendants will pay $209,000.00 into a Settlement Fund held by the Settlement Administrator as a qualified settlement fund. Agreement §§1.1(a), 1.3. No portion of the Settlement Fund reverts to Defendants. After deduction of Court-approved attorney's fees, litigation expenses, and the costs of notice and administration, the Net Settlement Fund will be distributed to all Class Members who do not exclude themselves ("Participating Class Members")

*pro rata*, based on the ratio of each Participating Class Member's MVAL to the aggregate MVAL incurred by the Class. *Id.* §1.1(b). The allocation therefore tracks each Class Member's actual loss.

There is no claims process. Current Plan participants will receive their Settlement Payment by direct deposit to their Plan accounts, which the Parties intend to be treated as restorative payments under Revenue Ruling 2002-45; former participants will receive a Settlement Check mailed to their best available address. Agreement §1.1(b). Settlement Checks are negotiable for ninety days. *Id.* §7.2. Any residual funds will be paid, subject to Court approval, to the Florida Bar Foundation as a *cy pres* recipient. *Id.* §§1.1(c), 7.3.

The estimated cost of notice and administration is $8,820.66. Class Counsel will apply for attorney's fees not to exceed twenty-five percent (25%) of the Settlement Fund ($52,250.00) and reimbursement of litigation expenses not to exceed $2,000.00.[2] If those amounts are approved, the Net Settlement Fund will be approximately $145,929.34, or an average of approximately $1,314.68 per Class Member.[3] The aggregate MVAL incurred by the Class is approximately $263,278.78; the Settlement Fund thus represents approximately 80% of the Class's maximum alleged losses, and the Net Settlement Fund approximately 55%. Murphy Decl. ¶8.

**C. Release**

In exchange, Participating Class Members will release the Released Persons from the Released Claims, which are limited to claims that were or could have been asserted in the Action or that arise out of the management, investments, fees, recordkeeping, and administration of the Plan, including the market value adjustment assessed as part of the recordkeeper transition, for

[2] The Settlement Agreement does not provide for a service or incentive award to the Class Representative, consistent with *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1255-61 (11th Cir. 2020).

[3] The figures in this paragraph assume that the Court awards the full amounts Class Counsel intends to request. The average is illustrative only; each Participating Class Member's actual payment depends on his or her proportionate share of the aggregate MVAL.

conduct on or before the date of the Preliminary Approval Order. Agreement §§4.1-4.2. The release expressly excludes individual claims for denial of benefits under 29 U.S.C. §1132(a)(1)(B), labor and employment claims unrelated to the Plan, and ERISA claims arising outside the context of the Plan. *Id.* §4.2.

**D. Notice, Exclusion, and Objection**

Within thirty days after entry of the Preliminary Approval Order, the Settlement Administrator will send the Notice by first-class mail and, where available, email to each Class Member, using addresses from Plan records updated through the National Change of Address database and skip tracing, and will re-mail any Notice returned as undeliverable. Agreement §§2.3, 6.7. The Settlement Administrator will also maintain a settlement website containing the Long Form Notice, the Settlement Agreement, the Preliminary Approval Order, and Class Counsel's fee application. *Id.* §6.6. Class Members may exclude themselves or object no later than twenty days before the Approval Hearing. *Id.* §§3.1-3.3. If more than five percent of Class Members opt out, the Parties have twenty-one days to determine whether to withdraw from the Settlement. *Id.* §3.4.

**E. Attorney's Fees and Expenses**

Class Counsel will apply for an award of attorney's fees under the common fund doctrine not to exceed 25% of the Settlement Fund, together with reimbursement of litigation expenses. Agreement §5.1. The fee application will be decided by the Court separately from approval of the Settlement, and the Settlement is not conditioned on any fee award. *Id.* §5.5. Any amount not awarded remains in the Settlement Fund for the benefit of the Class.

## IV. MEMORANDUM OF LAW

**A. The Standard for Preliminary Approval**

Rule 23(e) requires court approval of any class settlement. Approval proceeds in two steps. First, the court decides whether to direct notice to the class, which is warranted where the parties

show that the court "will likely be able to" (i) approve the proposal under Rule 23(e)(2) and (ii) certify the class for purposes of judgment on the proposal. Fed. R. Civ. P. 23(e)(1)(B). Second, after notice and a hearing, the court determines whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). At the preliminary stage the question is whether the settlement falls within the range of possible approval and is the product of good-faith, informed, arm's-length negotiation. *See In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011); *Manual for Complex Litigation (Fourth)* §21.632 (2004).

Courts in this District apply this standard by asking whether, on preliminary evaluation, the settlement "meets the standards for preliminary approval set forth in the amended Rule 23(e)" such that "the Court likely will be able to approve the proposed Settlement under Rule 23(e)(2)." *Morris v. PHH Mortg. Corp.*, No. 20-60633-CIV, 2022 WL 18859412, at *2 (S.D. Fla. Dec. 22, 2022). This Court has applied precisely that framework in granting preliminary approval of a class settlement, finding "upon preliminary evaluation that it will likely be able to approve the proposed Settlement as fair, reasonable and adequate" and that "giving notice of the Settlement is justified pursuant to Federal Rule of Civil Procedure 23(e)(1)." *Griffin v. Benefytt Techs., Inc.*, No. 20-CV-62371-AHS, 2023 WL 8354936, at *1 (S.D. Fla. Dec. 1, 2023) (Singhal, J.).

There is a strong judicial policy favoring settlement of class actions. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Rule 23(e)(2) directs the Court to consider whether: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of the proposed method of distributing relief, (iii) the terms of any proposed attorney's fee award, and (iv) any

agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. In this Circuit, those factors are applied together with the factors identified in *Bennett*: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett*, 737 F.2d at 986; *see Ponzio v. Pinon*, 87 F.4th 487, 494-95 (11th Cir. 2023); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021). As the Eleventh Circuit has now confirmed in its first interpretation of the 2018 amendment, the four Rule 23(e)(2) "core concerns" are "the primary considerations in evaluating proposed agreements," and the *Bennett* factors "can, where appropriate, complement those core concerns" rather than being displaced by them. *Ponzio*, 87 F.4th at 494-95.

## B. The Court Will Likely Be Able to Approve the Settlement Under Rule 23(e)(2)

### *1. The Class Representative and Class Counsel have adequately represented the Class.*

Plaintiff suffered the same market value adjustment as every other Class Member, has no interest antagonistic to the Class, and has actively participated in the case by providing documents and information to counsel, conferring with counsel regarding the litigation, and reviewing and approving the Settlement. Hebert Decl. ¶¶4-5, 8-13. Class Counsel have decades of experience prosecuting class actions in this District and throughout the country, investigated the claims, obtained the information necessary to value them, and negotiated a settlement that returns a meaningful portion of the alleged loss to the Class without the need for a claims process. Murphy Decl. ¶¶4-6, 11-25; Mathews Decl. ¶¶3, 7-12. This factor supports approval.

***2. The Settlement was negotiated at arm's length.***

The Settlement was reached only after adversarial negotiations between experienced counsel who were fully informed of the strengths and weaknesses of their positions. Murphy Decl. ¶6; Agreement §8.3. There is no evidence of collusion. Although Defendants have agreed not to oppose a fee request up to this Circuit's 25% benchmark, fees are payable only from the common fund in an amount set by the Court, any amount not awarded inures to the benefit of the Class, and no funds revert to Defendants. *See Bennett*, 737 F.2d at 986 (court must find settlement "is not the product of collusion between the parties"). These are the same hallmarks of a non-collusive settlement this Court credited in granting preliminary approval in *Griffin*, where it found the settlement "the product of non-collusive, arm's-length negotiations between experienced class action attorneys who were well informed of the strengths and weaknesses of the Action" and that it "does not grant preferential treatment to Plaintiffs, their counsel, or any subgroup." *Griffin*, 2023 WL 8354936, at *2.

***3. The relief provided to the Class is adequate.***

*Costs, risks, and delay of trial and appeal; likelihood of success; range of recovery.* The most that the Class could recover at trial is the aggregate MVAL, approximately $263,278.78 plus any prejudgment interest awarded in the Court's discretion. The Settlement Fund represents approximately 80% of that best-case recovery and is delivered now, without risk. "A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). The recovery here is far greater than that.

A settlement need not "provide the same scope of relief that could be obtained if class members were wholly successful at trial," because "compromise is the essence of settlement." *Ponzio*, 87 F.4th at 507 (quoting *Bennett*, 737 F.2d at 986). A recovery approaching full liability

is therefore a strong result: courts in this Circuit have held that "[s]ettling for close to the amount of full liability represents a respectable victory for the class members and therefore favors approval of settlement." *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1372 (N.D. Ga. 2019). Indeed, a settlement recovering roughly one-quarter of the class's maximum possible damages has been found to provide "an extremely fair and reasonable recovery." *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2020 WL 4586398 (S.D. Fla. Aug. 10, 2020). The Settlement Fund here - approximately 80% of the Class's best-case recovery- far exceeds that mark.

Against that certain recovery, continued litigation presented substantial risk. ERISA's duty of prudence is measured by the fiduciary's conduct and process at the time of the decision, not by results viewed in hindsight. *See* 29 U.S.C. §1104(a)(1)(B); *Tibble v. Edison Int'l*, 575 U.S. 523, 528-30 (2015); *Hughes v. Northwestern Univ.*, 595 U.S. 170, 177 (2022) (courts "must give due regard to the range of reasonable judgments a fiduciary may make"). Defendants contend that the decision to change recordkeepers was a prudent one made for the benefit of the Plan as a whole; that the market value adjustment was a contractual feature of the SAGIC Fund's group annuity contract, disclosed to participants, and driven by the rapid rise in interest rates during 2022 rather than by any fiduciary act; and that the alternatives to an immediate market-value payout carried their own costs and risks. Even if Plaintiff established a breach, in this Circuit the plaintiff bears the burden of proving that the breach caused the loss. *Pizarro v. Home Depot, Inc.*, 111 F.4th 1165, 1173-76 (11th Cir. 2024).[4] Proof of breach, causation, and loss would have required competing expert testimony on fiduciary process, stable value contracts, and damages - an expense that, in a case of this size, would have consumed a significant share of any recovery. Defendants would also

[4]The burden of proving loss causation in ERISA fiduciary-breach cases remains the subject of a circuit split.

have contested class certification. Trial and appeal would have delayed any payment for years. *See Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323-24 (S.D. Fla. 2005). These considerations, which correspond to the first four *Bennett* factors, weigh heavily in favor of approval.

*Effectiveness of the method of distribution.* The distribution method could not be more effective: every Participating Class Member is paid automatically, by Plan account deposit or by check, using Defendants' records to identify each Class Member and his or her MVAL. Agreement §§1.1(b), 2.3. Deposits to the accounts of current participants preserve the tax-deferred character of the recovery. No claim form is required. An automatic distribution of this kind- under which "eligible Settlement Class Members will receive their cash benefits automatically, without needing to fill out any claim forms - or indeed to take any affirmative steps whatsoever"- independently "satisfies Rule 23(e)(2)(C)(ii) and Rule 23(e)(2)(D)." *In re Checking Account Overdraft Litig.*, 2020 WL 4586398; *accord Pledger v. Reliance Tr. Co.*, No. 1:15-CV-4444-MHC, 2021 WL 2253497, at *6 (N.D. Ga. Mar. 8, 2021) (approving ERISA 401(k) settlement where "[c]urrent participants in the Plan will not be required to submit claims to receive relief").

*Terms of the proposed fee award.* Class Counsel will seek no more than 25% of the common fund, which is the "benchmark" in this Circuit. *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991); *see Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Fees will be paid only after entry of the Final Approval Order, and the Court retains full discretion over the amount. Agreement §§5.2, 5.5. The Notice discloses the amount to be requested, and the proposed Preliminary Approval Order (¶19) requires the fee application to be filed at least thirty-five days before the Approval Hearing - at least fourteen days before the objection deadline - and posted on the settlement website, so that Class Members may review it before deciding whether to object. *See* Fed. R. Civ. P. 23(h); *Johnson*, 975 F.3d at 1252-53. The fee request is substantially

less than the aggregate lodestar of Class Counsel, calculated at hourly rates of $775.00 for Mr. Murphy and $650.00 for Mr. Mathews. Murphy Decl. ¶¶31-35; Mathews Decl. ¶¶16-17. Those rates are in line with the prevailing market rates in this District for attorneys of comparable experience and reputation. Sweeney Decl. ¶¶5-6.

*Agreements required to be identified under Rule 23(e)(3).* There are no agreements made in connection with the Settlement other than the Settlement Agreement itself.

***4. The Settlement treats Class Members equitably relative to each other.***

Every Participating Class Member's payment is computed under the same formula and is proportional to the market value adjustment actually charged to his or her account. Agreement §1.1(b). The Class Representative is paid under the same formula as every other Class Member and receives no preferential treatment. The release is the same for all Class Members. This factor supports approval.

***5. The remaining* Bennett *factors support approval.***

The stage of proceedings supports approval because Class Counsel obtained the Plan-level data needed to measure each Class Member's loss and to evaluate Defendants' defenses before agreeing to settle; formal discovery would have added expense without materially improving the Parties' understanding of a claim that turns on a single, documented event. *See Lipuma*, 406 F. Supp. 2d at 1324. Early settlement preserved the fund for the Class. The reaction of the Class cannot be evaluated until notice has issued, and Plaintiff will address it in the motion for final approval. Class Counsel, who are experienced in class litigation, believe the Settlement is fair, reasonable, and in the best interest of the Class. Murphy Decl. ¶10; Mathews Decl. ¶5; *see Cotton*, 559 F.2d at 1330 (court is "entitled to rely upon the judgment of experienced counsel for the parties").

### C. The Court Will Likely Be Able to Certify the Settlement Class

A settlement class must satisfy Rule 23(a) and one subsection of Rule 23(b), except that the Court need not consider whether the case would present intractable management problems at trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Claims for breach of fiduciary duty brought on behalf of an ERISA plan are particularly well suited to class treatment because the fiduciary's duties run to the plan, and the challenged conduct is uniform as to all participants. *See* 29 U.S.C. §§1109(a), 1132(a)(2); *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008).

Consistent with that principle, courts within this Circuit regularly certify ERISA 401(k) fiduciary-breach classes for settlement purposes. *See Kinder v. Koch Indus., Inc.*, No. 1:20-CV-02973-MHC, 2021 WL 3360130, at *1 (N.D. Ga. July 30, 2021) (preliminarily certifying a 401(k) fiduciary-breach settlement class); *Pledger*, 2021 WL 2253497, at *6 (finally approving a 401(k) fiduciary-breach settlement as fair, reasonable, and adequate under Rule 23(e)(2)).

*Numerosity.* The Class has approximately 111 members, identified from Plan records. Joinder is impracticable. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (more than forty members generally adequate).

*Commonality.* Commonality requires a common contention "capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, every Class Member's claim depends on the same questions: whether Defendants were fiduciaries with respect to the recordkeeper transition; whether they acted prudently and loyally in effecting it; and whether their conduct caused the MVAL. The answers are the same for every Class Member. *See Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009).

*Typicality.* Plaintiff's claim arises from the same event and rests on the same legal theory as the claims of all Class Members: he was invested in the SAGIC Fund, and his account was

reduced by the same market value adjustment. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).

*Adequacy.* Adequacy asks whether any substantial conflict of interest exists between the representative and the class and whether the representative will adequately prosecute the action. *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). Plaintiff's interests are fully aligned with those of the Class, and he has retained counsel with extensive class action experience. Murphy Decl. ¶¶11-25; Mathews Decl. ¶¶7-12. For the same reasons, Class Counsel satisfy Rule 23(g).

*Rule 23(b)(3).* Common questions predominate because liability turns entirely on Defendants' Plan-level conduct, and the only individual issue - the amount of each Class Member's MVAL - is a mechanical calculation from Plan records. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1254-55, 1259-60 (11th Cir. 2004); *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985, 988 (11th Cir. 2016). A class action is superior because the modest individual losses at issue cannot economically support individual ERISA litigation requiring expert proof, and no other litigation concerning the controversy is known to be pending. Fed. R. Civ. P. 23(b)(3)(A)-(C). Certification under Rule 23(b)(3) also affords each Class Member notice and the right to opt out.

**D. The Proposed Notice Satisfies Rule 23 and Due Process**

For a Rule 23(b)(3) class, the Court must direct "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," by mail, electronic means, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *see also* Fed. R. Civ. P. 23(e)(1)(B). Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their

objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012).

The Notice Plan meets that standard. Every Class Member is known from Plan records and will receive individual notice by first-class mail and, where available, by email, with address updating and re-mailing of returned notices. Agreement §6.7. The Short Form Notice directs Class Members to the settlement website, where the Long Form Notice and the case documents will be posted. The Notice (Agreement, Ex. B) describes in plain language the nature of the Action, the class definition, the claims and defenses, the terms of the Settlement and the allocation formula, the fees and expenses to be requested, the binding effect of a judgment, the right to appear through counsel, the procedures and deadlines for exclusion and objection, and the date and place of the Approval Hearing, as required by Rule 23(c)(2)(B)(i)-(vii). This Court approved a comparable individual-notice program in granting preliminary approval and "[p]roviding for [n]otice" in *Griffin*. *See Griffin*, 2023 WL 8354936, at *1.

**E. Proposed Schedule**

Plaintiff respectfully proposes the following schedule, which is reflected in the proposed Preliminary Approval Order:[5]

| Event | Deadline | Source |
|---|---|---|
| Defendants deliver Class Member names, addresses, email addresses, and MVAL data to the Settlement Administrator and Class Counsel | 14 days after entry of the Preliminary Approval Order | Agreement §6.7(iii) |

[5]Defendants will serve the notices required by the Class Action Fairness Act, 28 U.S.C. §1715(b), within ten days after the filing of this Motion. Plaintiff requests that the Approval Hearing be set no earlier than one hundred (100) days after the filing of this Motion so that the final approval order complies with 28 U.S.C. §1715(d).

| Event | Deadline | Source |
| --- | --- | --- |
| Settlement Administrator mails and emails the Notice to all Class Members (after NCOA and skip-trace processing) and activates the Class Settlement Website ("Notice Date") | 30 days after entry of the Preliminary Approval Order | Agreement §§6.6(i), 6.7(iii); Proposed Order ¶7 |
| Class Counsel files motion for final approval and application for Attorney Fee Award and Litigation Expense Reimbursement; Settlement Administrator posts the application on the Class Settlement Website | Not later than 35 days before the Approval Hearing (at least 14 days before the objection deadline) | Agreement §§4.9, 5.5; Proposed Order ¶19; Fed. R. Civ. P. 23(h) |
| Deadline for Class Members to request exclusion or to file and serve objections | 20 days before the Approval Hearing | Agreement §§3.1(a)-(b), 3.3; Proposed Order ¶¶10, 12 |
| Settlement Administrator files proof of transmission of the Notice and report of exclusion requests | Not later than 10 days before the Approval Hearing | Agreement §2.4; Proposed Order ¶17 |
| Approval Hearing | On a date set by the Court at least 100 days after the filing of this Motion and at least 45 days after the Notice Date | Agreement §2.2(g)-(h); 28 U.S.C. §1715(d) |

## V. CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court grant this Motion and enter the proposed Preliminary Approval Order attached as Exhibit A to the Settlement Agreement, which: (1) preliminarily approves the Settlement; (2) conditionally certifies the Settlement Class; (3) appoints Plaintiff as Settlement Class Representative, and Robert W. Murphy, Esq. and Walter J. Mathews, Esq. as Settlement Class Counsel; (4) appoints American Legal Claim Services, LLC as Settlement Administrator; (5) approves the form and manner of Notice; (6) stays the Action and enjoins the prosecution of Released Claims pending final approval; and (7) schedules the Approval Hearing.

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), undersigned counsel certifies that he has conferred with counsel for Defendants, who advise that Defendants do not oppose the relief requested in this Motion.

Dated: October 14, 2026

Respectfully submitted,

/s/ Robert W. Murphy

ROBERT W. MURPHY, ESQ.
Florida Bar No. 717223
440 Premier Circle, Suite 240
Charlottesville, Virginia 22901
Telephone: 954-763-8660
Email: rwmurphy@lawfirmmurphy.com

WALTER J. MATHEWS, ESQ.
Florida Bar No. 174319
WALTER J. MATHEWS, P.A.
219 Davie Boulevard
Fort Lauderdale, Florida 33315
Telephone: (954) 463-1929
wjm@mathewsllp.com

*Counsel for Plaintiff and the Settlement Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 14, 2026, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notice of electronic filing to all counsel of record, including Andrew M. Gordon, Esq. and Lauren D. Swanson, Esq., Hinshaw & Culbertson LLP, 201 East Las Olas Blvd., Suite 1450, Fort Lauderdale, Florida 33301; and James Harbert, Esq. and Anthony E. Antognoli, Esq., Hinshaw & Culbertson LLP, 151 North Franklin Street, Suite 2500, Chicago, Illinois 60606.

/s/ Robert W. Murphy
Robert W. Murphy, Esq.